## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHERI SPEER, | |
|       Plaintiff, | No. 3:22-cv-00668 (SRU) |
|       v. | |
| UNITED STATES NATIONAL BANK, et al., | |
|       Defendants. | |

## <u>ORDER</u>

This case arises from a property owner's attempt to identify the owner and servicer of the mortgage on property she owns. Sheri Sheer ("Speer") proceeding *pro se*, commenced this action in April 2022 against defendants, United States National Bank ("National Bank"), SN Servicing Corporation ("SN Servicing"), Igloo Series V. Trust ("Igloo Series Trust"), and William Fogelman ("Fogelman") (collectively, the "Defendants"). Ms. Speer seeks a declaratory judgment that she owns real property located in Norwich, Connecticut (the "Property"). In addition, Ms. Speer alleges that the Defendants engaged in illegal and unfair practices in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42–110a *et seq.*

Before the Court are the Defendants' joint motion to dismiss the complaint pursuant to Rule 12(b)(6), doc. no. 19, and joint motion stay discovery, doc. no. 30. In addition, Ms. Speer has moved to amend her complaint to add facts about developments that have occurred since the filing of her complaint, doc. no. 33. For the following reasons, the Defendants' motion to dismiss is **granted**, the Defendants' motion to stay is **denied as moot**, and Ms. Speer's motion to amend is **denied without prejudice**.

## I.     STANDARD OF REVIEW

### A.     Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (cleaned up). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and … recovery is very remote and unlikely." *Id.* at 556 (cleaned up).

B.    Documents Considered

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

Moreover, the Court may nevertheless consider a document not incorporated by reference if the complaint "'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to complaint." *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). However, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Id.* (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Id.* (quoting *Faulkner*, 463 F.3d at 134).

Additionally, "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).

Finally, "if the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint." *See Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1232–33 (S.D.N.Y. 1994); *see also Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011).

C.    Construing *Pro Se* Pleadings

Ms. Speer proceeds *pro se*. Therefore, her pleadings are entitled to "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010); are assessed under "less stringent

standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)

(cleaned up); and are interpreted "to raise the strongest arguments that they suggest," *Triestman*

*v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (cleaned up). On the other hand, a

court's "duty to liberally construe a plaintiff's complaint" is not "the equivalent of a duty to re-

write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (cleaned up).

A court will not credit "threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements" nor "invent factual allegations" that are not in the pleadings. *Chavis*

*v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (cleaned up).


## II.   BACKGROUND

### A.   Factual Background

Nearly two decades ago, Ms. Speer executed a promissory note in the original principal

amount of $110,000.00 (the "Note") payable to the order of Washington Mutual Bank, FA. *See*

Defs. Ex. A, Doc. No. 20-1. That same day, Ms. Speer granted a mortgage to Washington

Mutual Bank, FA (the "Mortgage"), secured by the premises known as 9 Beckwith Street in

Norwich, Connecticut ("the Property"). *See* Defs. Ex. B, Doc. No. 20-2. Since then, the

Mortgage (together with the Note[1]) has been subject to several assignments. Those assignments

are as follows:

- *First, from* Washington Mutual Bank, FA, *to* JPMorgan Chase Bank, N.A., dated June 11, 2014;

- *Then, from* JPMorgan Chase Bank, N.A., *to* U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust ("LS59 Trust"), dated March 30, 2015;

- *Then, from* U.S. Bank Trust, N.A., as Trustee for LSF9 *to* U.S. Bank Trust, N.A., as Trustee of the Igloo Series Trust, dated February 18, 2022;

---

[1]    For brevity's sake, I will refer to the Note and the Mortgage collectively as the "Mortgage" or the "loan."

- *Finally, from* U.S. Bank Trust, N.A., as Trustee of the Igloo Series Trust *to* U.S. Bank Trust, N.A. as Trustee for Cabana Series V Trust ("Cabana Series Trust"), dated March 9, 2022.

At first, the Mortgage was serviced by Fay Servicing LLC. *See* Defs. Ex. E, Doc. No. 20-5. On January 12, 2022, SN Servicing assumed responsibility for the servicing of the loan, which at that point, was on behalf of Igloo Series Trust. *Id.* SN Servicing notified Ms. Speer of the change by letter, dated January 27, 2022 ("January 2022 Letter"). *Id.* That letter prompted Ms. Speer to respond.

On March 23, 2022, Ms. Speer sent a letter to SN Servicing, requesting, *inter alia*, verification of the debt. Defs. Ex. H, Doc. No. 20-8. Also in that letter, Ms. Speer asserts that SN Servicing violated the Fair Debt Collection Practices Act ("FDCPA") because the January 2022 Letter used the following language:

> You are hereby notified that this letter is being sent to you by SN Servicing Corporation, which is a debt collector. SN Servicing Corporation is attempting to collect a debt. Any information obtained by us will be used for that purpose.
>
> Notwithstanding anything in this notice to the contrary, if you have filed a bankruptcy petition and there is either an "automatic stay" in effect in your bankruptcy case, or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally.

*Id.*; *see also* Defs. Ex. E, Doc. No. 20-5. Per Ms. Speer, such language violated the FDCPA because "attempting to enforce the mortgage lien is an attempt to collect a debt." Defs. Ex. H, Doc. No. 20-8.

On March 29, 2022, SN Servicing, now acting on behalf of Cabana Series Trust, issued a notice ("March 2022 Default Notice") to Ms. Speer alerting her that she was in default under the terms and conditions of the Mortgage. Defs. Ex. I, Doc. No. 20-9.

A similar notice followed two months later. Defs. Ex. J, Doc. No. 20-10. In that notice, dated May 5, 2022 ("May 2022 Default Notice"), SN Servicing informed Ms. Speer that she was still in default and confirmed that Cabana Series Trust currently holds the right to enforce the terms of the Mortgage. *Id.* In responding to Ms. Speer's earlier request for debt verification, the Notice attached the Note, the Mortgage, Ms. Speer's recorded payments and the several notices of assignment. *Id.*

B.    Procedural Background

Following the March 2022 Default Notice, Ms. Speer commenced this lawsuit in Connecticut Superior Court on April 29, 2022. *See* Compl., Doc. No. 1. Thereafter, the suit was removed. *See* Not. of Removal, Doc. No. 1.

The complaint asserts three claims. First, Ms. Speer seeks a declaratory judgment to ascertain and/or quiet title as to the "ownership" of the Mortgage. *See* Compl., Doc. No. 1, at ¶¶ 1–13. Second, Ms. Speer claims that the Defendants violated the FDCPA and seeks statutory damages for those offenses. *Id.* at ¶¶ 14–18. Finally, Ms. Speer contends that the Defendants actions violated the Connecticut Unfair Trade Practices Act ("CUTPA") and seeks "damages and punitive damages" for those alleged violations. *Id.* at ¶¶ 19–23.

In July 2022, the Defendants filed a joint motion to dismiss Ms. Speer's complaint.[2] *See* Am. Mot. to Dismiss, Doc. No. 19; Am. Memo in Supp. of Mot. to Dismiss ("Defs. Mot."), Doc. No. 20. Along with its papers, the Defendants submitted the Mortgage, the Note, the several assignment contracts, and other loan documents issued to Ms. Speer.[3] *See* Doc. No. 20. In

---

[2]      There was an earlier motion to dismiss filed by the Defendants. *See* Doc. No. 14. Since that filing, the Defendants filed a motion to amend the motion, and I granted that motion. *See* Doc. Nos. 16, 17. Thus, the amended motion to dismiss is the operative motion.

[3]      As previously mentioned, I am permitted to consider these materials without converting this motion to dismiss into one for summary judgment because the documents are specifically referenced in, and are integral to, the

addition, the Defendants filed a motion to stay discovery. Doc. No. 30. Ms. Speer objected to

both motions. *See* Pl. Opp. to Mot. to Dismiss ("Pl. Opp."), Doc. No. 24; Pl. Opp. to Mot. to

Stay, Doc. No. 32.

In September 2022, Ms. Speer filed a motion for leave to amend her complaint. *See* Pl.

Am. Mot. to Amend, Doc. No. 33. Shortly thereafter, the Defendants filed a joint objection to

that motion. *See* Defs. Opp. to Mot. to Amend, Doc. No. 36.

## III.    DISCUSSION

A.    <u>The Defendants' Motion to Dismiss</u> *(doc. no. 19)*

The Defendants move to dismiss Ms. Speer's complaint in its entirety because she fails to

state a claim upon which relief can be granted. I agree.

*1.    Count One: Declaratory Judgment and Quiet Title*

In Count One, Ms. Speer requests a declaratory judgment "as to the holder of the Note …

[and the] Mortgage," and as to the holder of the "servicing rights of the Mortgage." Compl., Doc.

No. 1.  Relatedly, Ms. Speer seeks to "quiet title" under Conn. Gen. Stat. § 47-31. As the

Defendants contend however, Ms. Speer has not alleged any facts that show she is entitled to a

declaratory judgment, nor has she alleged facts to state a claim for quiet title.

I begin by analyzing Ms. Speer's request for a declaratory judgment. Section 2201 of

Title 28 of the United States Code enables the Court to "declare the rights and other legal

relations of any interested party seeking such declaration, whether or not further relief is or could

be sought." 28 U.S.C. § 2201(a). Claims for declaratory judgment may be brought so long as

there is "a substantial controversy, between parties having adverse legal interests, of sufficient

---

complaint. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (cleaned up).

immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Therefore, the question to be asked "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (cleaned up).

Although Ms. Speer alleges that Igloo Series Trust and Cabana Series Trust each separately claim that they hold a mortgage on the property, a basic inspection of the land records shows no such dispute. Compl., Doc. No. 1, at ¶¶ 2–3. Presently, Cabana Series Trust holds the right to enforce the terms of the Mortgage. In addition, those records confirm that SN Servicing has the rights to service the Mortgage. All relevant parties agree that Ms. Speer is the owner of the property, and that Cabana Series Trust is entitled to future mortgage payments from Ms. Speer. Presumably, Ms. Speer's confusion stems from the varying notices and assignment of contracts she received from SN Servicing.[4] But those notices have different dates and reflect the varying assignments over time. As such, the complaint, coupled with the documents incorporated therein, do not reveal the existence of a substantial dispute that would warrant the issuance of declaratory judgment. *See Conn. Parents Union v. Russell-Tucker*, 8 F. 4th 167, 172 (2d Cir. 2021) (Courts need not "credit a complaint's conclusory statements without reference to its factual context.") (cleaned up).

---

[4]     Admittedly, there is one point of confusion. The January 27, 2022 Letter indicates that SN Servicing would be servicing the Mortgage on behalf of Igloo Series Trust. Per the record of assignments, however, Igloo Series Trust was not assigned the Mortgage until February 18, 2022—several weeks later. In fact, the record reflects that LS59 Trust was the holder of the Mortgage as of January 27, 2022. Nevertheless, this discrepancy is likely of no significance because Ms. Speer does not ever contend that LS59 Trust had an interest that was adverse to any of the named defendants. Indeed, LS59 Trust is not mentioned in the complaint.

Similarly, there are no allegations that would support a claim to quiet title. The authority

governing quiet title actions in Connecticut is General Statutes § 47-31. Section 47-31 provides

in relevant part that:

> An action may be brought by any person claiming title to, or any interest in, real … property … against any person who may claim to own the property, or any part of it, or to have any estate in it … or to have any interest in the property, or any lien or encumbrance on it, adverse to the plaintiff … for the purpose of determining such adverse estate, interest, or claim, and to clear up all doubts and disputes and to quiet and settle the title to the property.

Conn. Gen. Stat. § 47-31. An action to quiet title is "a judicial mechanism for parties asserting

competing interests in real or personal property to settle the issue of title." *Smulley v. Webster*

*Fin. Corp.*, 2016 WL 3211807, at *2 (D. Conn. June 9, 2016) (quoting *Remington Investments,*

*Inc. v. National Properties, Inc.*, 49 Conn. App. 789, 797 (1998)). "In accordance with the

statutory language, an action for quiet title may only be maintained against defendants who

assert an interest in the property that is adverse to the plaintiff's interest." *Id.* (citing *Gager v.*

*Carlson*, 146 Conn. 288, 289 (1959)).

Here, the allegations in the complaint boil down to uncertainty over who holds the

Mortgage. Apprehension over who holds the loan, however, does not cloud Ms. Speer's title.

*See Lemelson v. U.S. Bank Nat. Ass'n*, 721 F.3d 18, 24 n.7 (1st Cir. 2013) ("Uncertainty as to

who holds a valid mortgage does not provide the requisite adversity to cloud a mortgagor's …

title."); *see also Frost v. Castle Point Mortg., Inc.*, 2021 WL 4952506, at *4 (D. Me. Oct. 25,

2021). As already discussed, there is no genuine dispute between any of the parties over the

status of the property. Ms. Speer acknowledges that she took out a mortgage on the Property. Not

once does she allege that the Mortgage is no longer valid; or that it was induced fraudulently.

Further, Ms. Speer does not allege that she paid the Defendants more than the amounts due; or

that any entity other than the Defendants has attempted to recover on the loan. The documents

incorporated in the complaint unambiguously establish that Cabana Series Trust is entitled to future mortgage payments from Ms. Speer. It follows that none of the claimed interests here are "adverse" to one another for purposes of the statute or a quiet title action. *See Boco v. Argent Mortgage Co., LLC*, 2014 WL 1312101, at \*7 (E.D.N.Y. 2014) (dismissing quiet title action under New York law where the plaintiff simply disputes which entity holds a security interest in the property"). Accordingly, the Defendants' motion to dismiss Count One is **granted**.

2.    *Count Two: Violations of the Fair Debt Collection Practices Act*

Next, Ms. Speer asserts a claim under the FDCPA. By way of background, the FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Hart v. FCI Lender Servs., Inc.*, 797 F.3d 219, 223 (2d Cir. 2015) (quoting 15 U.S.C. § 1692(e)).

To state a claim under the FDCPA, a plaintiff must establish three elements: "(1) that the plaintiff is a 'consumer' who allegedly owes a debt or a person who has been the object of efforts to collect a consumer debt; (2) the defendant collecting the debt is a 'debt collector' as that term is defined by the FDCPA; and (3) that the defendant has engaged in any act or omission in violation of the FDCPA." *Aviles v. Wayside Auto Body, Inc.*, 49 F. Supp. 3d 216, 225 (D. Conn. 2014); *see also Billie v. Credit Collection Servs., Inc.*, 2017 WL 396536, at \*2 (D. Conn. Jan. 30, 2017) (same).

I start and end my analysis of this claim with the first element. Ms. Speer has failed to allege that her debt is a consumer debt. Under the FDCPA, a "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). A "debt"

within the meaning of the FDCPA is an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for *personal, family, or household purposes*, whether or not such obligation has been reduced to judgment." *Id.* § 1692a(5) (emphasis added). Thus, FDCPA actions must concern consumer debts, or the "obligation[s] of a consumer," while "actions arising out of commercial debts are not covered by the protective provisions of the FDCPA." *Goldman v. Cohen*, 445 F.3d 152, 154 n.1 (2d Cir. 2006).

The question of whether an obligation qualifies as a "debt" primarily turns on "the purpose for which [the obligation] was incurred." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 82–83 (2d Cir. 2018). Mortgage notes for personal residences can constitute a "debt" under the FDCPA. *Id.* (finding that a mortgage note financing the purchase of a personal residence qualified as a "debt"). By contrast, mortgage notes for investment or rental properties do not constitute "debt" under the FDCPA. *See, e.g., Aniel v. Aurora Loan Servs. LLC*, 550 F. App'x 416, 418 (9th Cir. 2013); *see also Betty Hamal v. Seterus, Inc.*, 2017 WL 2973570, at *2 (N.D. Ill. July 12, 2017).

As pled, Ms. Speer fails to allege that the loan at issue constitutes a "debt" covered by the FDCPA. Not once does Ms. Speer allege that the Property was used for personal, family, or household purposes. Nor does she state that the Property is, or was, used as her personal residence. Instead, she only alleges that she is the property "owner." *See* Compl., Doc. No. 1, at ¶ 1. That omission is critical, especially considering the other facts. For one, the address listed in Ms. Speer's complaint for purposes of her appearance is not the address of the Property. Second, the Mortgage itself contains a 1-4 Family Rider, which waives limitations in the Mortgage on renting the property. Even construed liberally, Ms. Speer has failed to allege facts that the instant

dispute arises from a consumer transaction. *See*, *e.g.*, *Billie v. Credit Collection Servs., Inc.*, 2017 WL 396536, at *3 (D. Conn. Jan. 30, 2017) ("[An] FDCPA complaint that merely recites that the debt at issue is 'primarily for personal, family, or household purposes,' as required by the FDCPA, fails to state a claim if no additional factual allegations showing that the debt is a consumer debt are present."); *cf. Jones v. New Penn Fin., LLC*, 2021 WL 405888 (E.D.N.Y. Feb. 5, 2021) (holding that, where a plaintiff alleges that the property securing the mortgage is her personal residence, a defendant cannot succeed at the motion to dismiss stage on the theory that the "debt" was commercial because the mortgage terms contemplated that the property could be used as a rental property). Accordingly, the Defendants motion to dismiss this claim is **granted**.[5]

> 3.    *Count Three: CUTPA*

In Count Three, Ms. Speer alleges that the Defendants violated CUTPA. CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *See* Conn. Gen. Stat. § 42-110b. To state a CUTPA claim, a plaintiff must allege that (1) the defendant engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce; and (2) each class member claiming entitlement to relief under CUTPA has suffered an ascertainable loss of money or property as a result of the defendant's acts or practices. *Johnson v. JPMorgan Chase Bank, N.A.*, 2019 WL 1403396, at *4 (D. Conn. Mar. 28, 2019) (quoting *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208, 217 (2008)) (cleaned up). The statute is "remedial in character … and must be liberally construed in

---

[5]     To the extent that Ms. Speer raises a claim under Real Estate Settlement Procedures Act ("RESPA"), that claim fails for identical reasons. *See* 12 U.S.C. § 2606(a)(1); 12 C.F.R. § 1204.5(b); *see also Friedman v. Maspeth Fed. Loan & Sav. Ass'n*, 30 F. Supp. 3d 183, 190 (E.D.N.Y. 2014) ("Credit transactions made primarily for business, commercial, or agricultural purposes are exempt from RESPA.") (cleaned up).

favor of those whom the legislature intended to benefit." *Fink v. Golenbock*, 238 Conn. 183, 213 (1996) (cleaned up); *see also* Conn. Gen. Stat. § 42-110g(a).

The second element is of import. That is because the ascertainable loss requirement is a "threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief." *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 276 (D. Conn. 2017) (quoting *Di Teresi v. Stamford Health Sys.*, 149 Conn. App. 502, 508 (2014)). In *Di Teresi*, the Connecticut Appellate court interpreted CUTPA's ascertainable loss requirement to necessitate "actual monetary or physical loss," concluding that claims of emotional damages, alone, would not trigger liability. *Id.* (quoting *Di Teresi*, 149 Conn. App. at 510); *see also Larobina v. Wells Fargo Bank, N.A.*, 632 F. App'x. 55, 56–57 (2d Cir. 2016) (approving of summary judgment for the defendant when the CUTPA plaintiff had claimed only emotional distress and holding that "although the Connecticut Supreme Court has not ruled on the question, state appellate precedents allow us to predict with confidence that Connecticut's highest court would reach the same outcome") (cleaned up).

Against that backdrop, I conclude that Ms. Speer has failed to state a CUTPA claim. Aside from the conclusory allegation that she "suffered an ascertainable loss," there are simply no facts to indicate the source of the alleged loss, or how the Defendants' alleged conduct led to that loss. To be clear, "[a]n ascertainable loss does not require a precise dollar amount; all that is required is an amount that is 'capable of being discovered, observed[,] or established.'" *Sticht v. Wells Fargo Bank, N.A.*, 2022 WL 267470, at *4 (D. Conn. Jan. 28, 2022) (quoting *Di Teresi*, 149 Conn. App. at 508) (cleaned up). That said, some allegation of monetary loss is required. *Id.* (finding that ascertainable loss was sufficiently pled where plaintiff alleged loss of property

value and money spent to avoid foreclosure). Ms. Speer's complaint is devoid of any such facts. Accordingly, the Defendants' motion to dismiss this claim is **granted**.[6]

In summary, the Defendants' motion to dismiss, doc. no. 19, is **granted**. However, Ms. Speer may amend her complaint to cure the deficiencies identified in this Order.

B.   The Defendants' Motion to Stay *(doc. no. 30)*

Because I grant the Defendants' joint motion to dismiss, the Defendants' motion to stay discovery is **denied as moot.**

C.   The Plaintiff's Motion to Amend *(doc. no. 33)*

Finally, I address Ms. Speer's motion to amend her complaint. Doc. No. 33. Liberally construed, the purpose of the amendment is twofold: first, to set forth additional facts that have allegedly occurred since the filing of the complaint; and two, to add a new defendant, Demerle Hoeger LLP ("Demerle Hoeger"). Because such an amendment would be futile, the motion to amend is **denied**.

Federal Rule of Civil Procedure 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). Nevertheless, "[l]eave to amend may properly be denied if the amendment would be futile…." *Anderson News. L.L.C. v. Am. Media,*

---

[6]     For similar reasons, the Defendants' motion to dismiss Count One is also granted for the alternate reason that Ms. Speer has wholly failed to allege constitutional standing. Article III standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish Article III standing, a plaintiff must establish three elements: (1) injury-in-fact, meaning "an actual or imminent" and "concrete and particularized" harm to a "legally protected interest"; (2) causation of the injury; and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).
        Assuming arguendo that Ms. Speer was able to state a claim for quiet title, she does not explain how she was harmed. Aside from the fact that no injury is pled, I, too, cannot see how Ms. Speer has "faced []or is in danger of facing an imminent injury, as opposed to a conjectural or hypothetical one, to warrant [the relief she seeks]". *Tamir v. Bank of New York Mellon*, 2013 WL 4522926, at *6 (E.D.N.Y. Aug. 27, 2013). As such, Ms. Speer lacks standing because her only injuries are conjectural or speculative at this point. *See, e.g., Smulley v. Webster Fin. Corp.*, 2016 WL 3211807, at *3 (D. Conn. June 9, 2016) ("… [The] plaintiff lacks constitutional standing to pursue her [quiet title] claim because she does not allege sufficient injury-in-fact from her alleged uncertainty about who has the right to enforce her mortgage obligation against her."). Should Ms. Speer choose to amend her complaint, she must cure this deficiency because it determines this Court's subject matter jurisdiction over that claim.

*Inc.,* 680 F.3d 162, 185 (2d Cir. 2012) (cleaned up). An amendment is properly denied as futile if the proposed new claim has no merit or fails to demonstrate a cognizable or sufficient claim. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). In deciding futility, the court must determine if the proposed amendment contains "sufficient factual matter" which, accepted as true, states a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

Furthermore, where, as here, the proposed amended complaint adds new parties, Federal Rule of Civil Procedure 21 also governs. Rule 21 explains that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21; *see also City of Syracuse v. Onondaga Cty.*, 464 F.3d 297, 308 (2d Cir. 2006). Because "the standards governing motions to amend under Rule 15 apply with equal force to motions to add parties under Rule 21," I analyze Ms. Speer's proposed amendment to add a new defendant using the general standards governing amendment of pleadings. *Lego A/S v. Best-Lock Const. Toys, Inc.*, 886 F. Supp. 2d 65, 71 (D. Conn. 2012); *see also Diggs v. Marikah*, 2013 WL 227728, at *2 (S.D.N.Y. Jan. 22, 2013) ("[U]nder Rule 21, courts should apply the same standard of liberality afforded to motions to amend pleadings under Rule 15.") (cleaned up).

Since the filing of this lawsuit, Cabana Series Trust has commenced foreclosure proceedings against Ms. Speer in Connecticut Superior Court. That proceeding is entitled *United States Bank Trust National Association, as Trustee of Cabana Series V Trust v. Sheri Speer, et al.*, Dkt. KNL-CV22-6058114-S (the "Foreclosure Case"). Ms. Speer asserts that the foreclosure proceedings are improper. Moreover, Ms. Speer moves to add Demerle Hoeger as a defendant because the firm mailed Ms. Speer an acceleration letter and served Ms. Speer with the

foreclosure complaint. Per Ms. Speer, Demerle Hoeger is "liabl[e]" for those actions. *See* Pl. Am. Mot. to Amend, Doc. No. 33, at 2.

Even crediting Ms. Speer's allegations as true— that is, the foreclosure proceedings against her are improper—she must still state facts that would support that conclusion. She does not. Relatedly, Ms. Speer's proposed amendment does not specify whether she incorporates her new allegations into an already-raised cause of action, or whether she seeks to raise a new cause of action. To the extent she does the former, the additional facts do not give rise to a claim for quiet title, FDCPA or CUTPA for the reasons already articulated above. And if she does the latter, I cannot ascertain a plausible cause of action based on the limited allegations set forth in the proposed amendment. Ms. Speer suggests that the Defendants did not have the legal authority to commence foreclosure proceedings because this federal action was pending. I am aware of no legal basis for that claim, however.

On top of that, the proposed amendment suffers from a more fatal flaw. Distilled to its essence, Ms. Speer challenges the manner and basis of the foreclosure proceedings that Cabana Series Trust commenced against her. Such action cannot be maintained. Under *Younger v. Harris*, 401 U.S. 37, 91 (1971), federal courts must abstain from exercising their jurisdiction where federal review would disrupt state proceedings that: (1) are pending; (2) implicate important state interests; and (3) provide the plaintiff an adequate opportunity to litigate federal claims. *See Hansel v. Town Ct. for Town of Springfield*, 56 F.3d 391, 393 (2d Cir. 1995).[7] The requirements of *Younger* abstention are met here.

---

[7]        As an exception to *Younger*, a federal court may "intervene in a state proceeding upon a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (quoting *Younger*, 401 U.S. at 54). None of the narrow exceptions to *Younger* abstention applies here.

First, the foreclosure proceeding is still pending. Specifically, Cabana Series Trust commenced foreclosure proceedings on August 25, 2022. *See* Foreclosure Case. Shortly thereafter, Ms. Speer moved to dismiss the action, arguing that the state court lacks subject matter jurisdiction due to (1) the prior pending action doctrine; and (2) Cabana Series Trust's failure to comply with certain statutes before commencing the foreclosure proceeding. *See* Foreclosure Case, Dkt. Nos. 104.00, 105.00. The state court disagreed. *See* Foreclosure Case, Dkt. No. 104.02. First, the state court held that prior pending action doctrine does not apply because the two cases (state foreclosure proceeding and this federal action) implicate distinct legal rights. *Id.* Second, the state court held that Cabana Series Trust was not obligated to comply with the statute identified by Ms. Speer because she did not occupy the Property. *Id.* Since that ruling, Ms. Speer moved for reconsideration, which was just denied last month. *See* Foreclosure Case, Dkt. Nos. 114.00, 114.01. All things considered, the state foreclosure proceedings remain active, satisfying the first element.

Second, the state court proceeding concerns the disposition of real property and hence implicates important state interests. *See Clark v. Bloomberg*, 2010 WL 1438803, at *2 (E.D.N.Y. Apr. 12, 2010) (*Younger* abstention doctrine precludes federal district court from staying pending state-court foreclosure and eviction proceedings because "both concern the disposition of real property and hence implicate important state interests.").

And third, Ms. Speer has not alleged any reason to doubt that the state proceeding provides her with an adequate forum to raise any pertinent federal claims. *See Spargo v. New York State Com'n on Judicial Conduct*, 351 F.3d 65, 78 (2d Cir. 2003) (holding that, to avoid *Younger* abstention, plaintiffs "must demonstrate that state law bars the effective consideration of their [federal] claims"). In fact, the instant motion does not specify what, if any,

federal claims Ms. Speer wishes to raise but cannot in state court. Taken together, *Younger* bars this Court from exercising jurisdiction over claims concerning the ongoing foreclosure proceedings. *See Graves v. One W. Bank, FSB*, 2014 WL 994366, at *3 (D. Md. Mar. 13, 2014) (finding that, a proposed amendment that seeks to challenge ongoing state foreclosure proceedings would be futile).

In sum, Ms. Speer's motion to amend is denied to the extent that she seeks to raise claims that pertain to the foreclosure proceedings. However, for reasons already articulated, I permit Ms. Speer one opportunity to amend her complaint to cure the deficiencies identified in this ruling. Consistent with this ruling however, she may not raise claims that pertain to the foreclosure proceedings unless she can articulate a basis that warrants an exception to *Younger*.

## IV.    CONCLUSION

For the following reasons, the Defendants' motion to dismiss, doc. no. 19, is **granted**, and the Defendants' motion to stay, doc. no. 30, is **denied as moot**. The complaint is **dismissed without prejudice.** Ms. Speer's motion to amend, doc. no. 33, is **denied without prejudice**. However, I permit Ms. Speer one opportunity to amend her complaint to cure the deficiencies identified in this Order. Failure to file an amended complaint within 30 days of this Order will result in closure of this case.

So ordered.

Dated at Bridgeport, Connecticut, this 20th day of March 2023.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge