## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHERI SPEER,<br>            Plaintiff, | No. 3:22-cv-00668 (SRU) |
| v. | |
| UNITED STATES NATIONAL BANK, et al.,<br>            Defendants. | |

## <u>ORDER</u>

This case principally arises from Sheri Speer's attempt to identify the owner and servicer of the mortgage on a property that she owns in Norwich, Connecticut, which is now the subject of a foreclosure action in Connecticut state court. Ms. Speer, proceeding *pro se*, brings this action against United States National Bank as Trustee for Cabana Series V Trust ("National Bank"), SN Servicing Corporation ("SN Servicing"), and Igloo Series V. Trust ("Igloo Series Trust") (collectively, the "Defendants"). After I dismissed Ms. Speer's original complaint without prejudice, she filed an amended complaint on April 14, 2023. *See* Doc. No. 40. That amended complaint asserts claims against the Defendants for breach of contract and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42–110a *et seq*. For the reasons that follow, the Defendants' motion to dismiss Ms. Speer's amended complaint, doc. no. 47, is **granted**, and Ms. Speer's motion for reconsideration of my order denying her motion to remand, doc no. 51, is **denied as moot**.

## I.    BACKGROUND

The Court assumes familiarity with the facts and background of this case, as set forth in my Order dismissing Ms. Speer's original complaint. *See* Doc. No. 39. I therefore only recount facts relevant to the instant motion to dismiss.

Ms. Speer originally filed this action in Connecticut Superior Court, and it was removed to this Court on May 16, 2022. *See* Doc. No. 1. Ms. Speer's original complaint sought a declaratory judgment to ascertain the rights and obligations of the parties under a promissory note (the "Note") and mortgage agreement (the "Mortgage") secured by a property at 9 Beckwith Street in Norwich, Connecticut (the "Property"), and alleged that the Defendants engaged in illegal and unfair practices in violation of the Fair Debt Collection Practices Act (FDCPA) and the Connecticut Unfair Trade Practices Act (CUTPA). On March 20, 2024, I dismissed Ms. Speer's complaint without prejudice, and granted Ms. Speer one opportunity to amend her complaint. *See* Doc. No. 39. On April 14, 2023, Ms. Speer filed an amended complaint, asserting two claims for breach of contract and violation of CUTPA, along with a motion to remand the case to state court, which I denied on January 12, 2024. *See* Docs. No. 40-41, 50. On May 5, 2023, the Defendants moved to dismiss Ms. Speer's entire amended complaint. *See* Doc. No. 47. On January 26, 2024, Ms. Speer moved for reconsideration of my order denying her motion to remand. *See* Doc. No. 51. There are no other pending motions in this case.

## II.    STANDARD OF REVIEW

### A.    Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the

plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (cleaned up). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (cleaned up).

B.      Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). A dismissal pursuant to Rule 12(b)(1) may be made by motion of a party or raised sua sponte by the Court. *See, e.g., Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 266 (2d Cir.1996). When deciding whether to dismiss a claim pursuant to Rule 12(b)(1), "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," but "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the

pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal citations omitted). A court may also consider materials outside of the pleadings to resolve any jurisdictional disputes. *J.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004), *cert. denied*, 544 U.S. 968 (2005).

C.      Construing *Pro Se* Pleadings

Ms. Speer proceeds *pro se*. Therefore, her pleadings are entitled to "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010); are assessed under "less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (cleaned up); and are interpreted "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (cleaned up). On the other hand, a court's "duty to liberally construe a plaintiff's complaint" is not "the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (cleaned up). A court will not credit "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" nor "invent factual allegations" that are not in the pleadings. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (cleaned up).

III.     **DISCUSSION**

A.      The Defendants' Motion to Dismiss *(doc. no. 47)*

The Defendants move to dismiss Ms. Speer's amended complaint because it fails to state a claim upon which relief can be granted. For the reasons that follow, the Defendants' motion is **granted.**

1.      *Ms. Speer's Request for Declaratory Relief*

As an initial matter, I note that, though she no longer formally pleads a claim for a declaratory judgment, Ms. Speer's amended complaint continues to seek declaratory relief.

Count One of Ms. Speer's original complaint sought a declaratory judgment "as to the holder of the Note, the owner of the Mortgage, and the servicing rights of the Mortgage." Compl., Doc. No. 1. In her amended complaint, Ms. Speer's first count instead asserts a claim for breach of contract. *See* Am. Compl., Doc. No. 40. However, in support of her first count, as amended, Ms. Speer makes nearly identical factual allegations to those made in the first count of her original complaint (copying paragraphs one through thirteen and adding paragraphs fourteen through seventeen) and continues to seek, in addition now to monetary damages, a "[d]eclaratory judgment as to who owns the mortgage, and servicing rights on [her] property and quieting title to all others who would assert said ownership as of April 30, 2022." *Id.* at 4.

In my earlier order dismissing Ms. Speer's original complaint, I held that Ms. Speer had not made any allegations supporting a claim for declaratory judgment or to quiet title, because the documents incorporated in the complaint unambiguously established that Cabana Series Trust held the Mortgage and that SN Servicing had the rights to service the Mortgage. *See* Doc. No. 39, at 8-10. None of the allegations that Ms. Speer has added to her amended complaint, which allege that Ms. Speer was denied the benefit of various terms of the Note, *see* doc. no. 40, at ¶ 15, create any controversy about the status of the property. Therefore, I conclude that there remains an absence of a substantial dispute that would warrant the issuance of declaratory judgment.

Moreover, under *Younger v. Harris*, 401 U.S. 37 (1971), federal courts must abstain from considering requests for injunctive or declaratory relief where federal review would disrupt state proceedings that: (1) are pending; (2) implicate important state interests; and (3) provide the plaintiff an adequate opportunity to litigate federal claims. *See Hansel v. Town Ct. for Town of Springfield*, 56 F.3d 391, 393 (2d Cir. 1995). *See also Samuels v. Mackell,* 401 U.S. 66 (1971)

(extending *Younger*'s abstention analysis to requests for declaratory relief that would frustrate pending state proceedings). "When *Younger* applies, abstention is mandatory and its application deprives the federal court of jurisdiction in the matter." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 197 (2d Cir. 2002) (citing *Colorado Water Conserv. Dist. v. United States*, 424 U.S. 800, 816 n. 22 (1976)). The requirements of *Younger* abstention are met here, and thus Ms. Speer's request for declaratory relief must be dismissed for lack of subject matter jurisdiction.

Since the filing of this lawsuit, but before Ms. Speer amended her complaint, Cabana Series Trust commenced foreclosure proceedings against Ms. Speer in Connecticut Superior Court. *See United States Bank Trust National Association, as Trustee of Cabana Series V Trust v. Sheri Speer, et al.*, Dkt. KNL-CV22-6058114-S (the "foreclosure case"). That proceeding is ongoing, and concerns the same property that is the subject matter of this case. Ms. Speer's claim for declaratory relief would undeniably interfere with the foreclosure case, because she asks this court to determine the rights and obligations of the parties with respect to the property currently under the jurisdiction of the state court.

Second, the foreclosure case concerns the disposition of real property and hence implicates important state interests. *See Clark v. Bloomberg*, 2010 WL 1438803, at *2 (E.D.N.Y. Apr. 12, 2010) (*Younger* abstention doctrine precludes federal district court from staying pending state-court foreclosure and eviction proceedings because "both concern the disposition of real property and hence implicate important state interests."). And, finally, Ms. Speer has not alleged any reason to doubt that the state proceeding provides her with an adequate forum to raise her claim for declaratory judgment. In fact, the declaratory relief that she seeks—a determination of her own and the Defendants' rights and obligations under the Note and the Mortgage—is at the heart of the foreclosure case. Therefore, Ms. Speer's request for declaratory relief is denied.

However, it is "well established that *Younger* abstention is inappropriate on a claim for money damages." *Diamond "D" Const. Corp.*, 282 F.3d at 196 n.2. Therefore, the doctrine of *Younger* abstention does not deprive this Court of jurisdiction over Ms. Speer's claims for damages for breach of contract and violation of CUTPA. I will accordingly consider The Defendants' arguments to dismiss these claims pursuant to Rule 12(b)(6).

2.    *Breach of Contract*

Ms. Speer alleges that The Defendants breached a contract—specifically, the Mortgage—because they failed to provide an opportunity for Ms. Speer to cure her default before commencing a foreclose, and did not provide timely advance notice of transfer of interest in the Note, Mortgage, and servicing rights related to the Mortgage. *See* Am. Compl., Doc. No. 40, at ¶¶ 15-16. Ms. Speer further alleges, without any explanation, that "[a]s a consequence of the Defendants' breach," she "was damaged." *Id.* at 17. Under Connecticut law, the elements of a claim for breach of contract are "the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 291 (2014).

The Defendants argue that Ms. Speer's claim for breach of contract should be dismissed because the record contradicts her allegations of actual breach of contract. *See* Mot. to Dismiss, Doc. No. 48, at 7-8. Though the factual arguments that the Defendants make with respect to Ms. Speer's failure to adequately plead the third element of her claim—breach—together with the relevant documents that they attach to their motion as exhibits, seem convincing, this Court need not reach an analysis of that element of Ms. Speer's claim. Such an analysis seems inappropriate at this stage given Ms. Speer's *pro se* status and the fact that she has not had the benefit of discovery. *See* Aff. in Opp'n, Doc. No. 49-1. Nor does this Court need to decide whether Ms.

7

Speer's bare allegation that she "was damaged," when assessed under the less stringent standard

that must be applied to *pro se* complaints, is plausible. That is because Ms. Speer does not allege

that she has performed under the Mortgage. In fact, numerous of the allegations in Ms. Speer's

amended complaint suggest the opposite—that she has failed to make timely mortgage

payments. *See, e.g.,* Doc. No. 40, at ¶¶ 6-9, 22-23 (allegations regarding Ms. Speer's receipt of

default letters from SN Servicing, and her applications for loan modification and loss

mitigation).

Because Ms. Speer fails to plead her own performance under the Mortgage, an essential

element of her breach of contract claim under Connecticut law, her claim must be dismissed.

This Court is not aware of any Connecticut caselaw establishing that a mortgagor may bring a

breach of contract claim if they fail to allege their own performance. And, other courts within the

Second Circuit have similarly dismissed breach of contract claims brought by plaintiff

mortgagors, either where those plaintiffs failed to allege their own performance, or where they

make allegations that indicate their failure to make required payments under the Mortgage. *See,*

*e.g., Nichols v. BAC Home Loans Servicing LP,* 2013 WL 5723072, at *10 (N.D.N.Y. Oct. 18,

2013); *Harte v. Ocwen Fin. Corp.,* 2016 WL 3647687, at *5 (E.D.N.Y. July 1, 2016). The fact

that at least one of Ms. Speer's allegations of breach—her allegation that she was not given an

opportunity to cure her default before the Defendants commenced a foreclosure action—could

not have occurred prior to her nonperformance does not compel a contrary conclusion. In the

foreclosure context, contractual requirements that come into effect only after a mortgagor's

default, such as an opportunity to cure, are not rendered "meaningless" if they cannot be

enforced through a breach of contract action, because they may be asserted as a defense to the

foreclosure action. *Harte*, 2016 WL 3647687, at *4 ("[I]t is not the case that a plaintiff cannot

enforce a defendant's obligations under the mortgage, but in many cases the strictures of contract claims require that a plaintiff enforce those obligations in the context of foreclosure proceedings.") (cleaned up). Finally, even assuming that Ms. Speer's allegations regarding lack of notice of transfer amounted to breach of the Mortgage, those allegations of breach cannot plausibly have been material, and therefore would not excuse Ms. Speer's duty to perform under Connecticut law. *See Slater v. Solon,* 2021 WL 5277567, at *2-3 (Conn. Super. Ct. Oct. 19, 2021) ("[A] material breach of contract excuses the non-breaching party's duty of performance . . . the breach must be material, that is, it must be so important that it vitiates or destroys the entire purpose for entering into the contract.") (internal citations omitted).

Therefore, Ms. Speer's failure to allege her performance under the Mortgage is fatal to her breach of contract claim, and The Defendants' motion to dismiss that claim is **granted.**

### 3.   CUTPA

In Count Two, Ms. Speer alleges that the Defendants violated CUTPA, which prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *See* Conn. Gen. Stat. § 42-110b(a). To state a CUTPA claim, a plaintiff must allege that (1) the defendant(s) engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce; and (2) she has suffered an ascertainable loss of money or property as a result of the defendant's acts or practices. *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208, 217 (2008). The statute is "remedial in character . . . and must be liberally construed in favor of those whom the legislature intended to benefit." *Fink v. Golenbock*, 238 Conn. 183, 213 (1996) (cleaned up); *see also* Conn. Gen. Stat. § 42-110g(a).

In support of her CUTPA claim, Ms. Speer copies verbatim the allegations made in her original complaint to support the Fair Debt Collections Practices Act claim (FDCPA) she had

pled in that complaint. *Compare* Compl., Doc. No. 1, at ¶¶ 14-18, *with* Am. Compl., Doc. No. 40, at ¶¶ 14-18.[1] Her amended complaint also pleads additional facts that she alleges amount to slander of title, violation of the Real Estate Settlement Procedures Act (RESPA), and violation of CUTPA generally. *See* Am. Compl., Doc. No. 40, at ¶¶ 19-27. In my earlier order dismissing Ms. Speer's original complaint, I concluded that she had failed to state a CUTPA claim because she had only made a conclusory allegation that she had "suffered an ascertainable loss," which was not sufficient to satisfy the second element of her claim. *See* Doc. No. 39, at 13. However, in her amended complaint Ms. Speer cures that defect, alleging more specifically that, because of the Defendants' actions, she has suffered "an accumulation of interest, default fees, significant arrearages, attorneys' fees, and a much higher mortgage payment, lost borrower incentive payments under HAMP, and emotional distress." Doc. No. 40, at ¶ 26.

Nonetheless, I conclude that Ms. Speer' complaint, as amended, fails to state a CUTPA claim upon which relief can be granted. To the extent that Ms. Speer continues to assert that the Defendants' actions violate the FDCPA, those allegations cannot be credited for the same reasons that I explained in my prior order dismissing Ms. Speer's original complaint: the FDCPA only applies to Mortgage notes for personal residences, and Ms. Speer does not allege that the Property is or has ever been her personal residence. *See* Doc. No. 39, at 13. The same is true with respect to Ms. Speer's allegations that the Defendants failed to comply with the requirements of RESPA. *See id.*, at n.5; *Friedman v. Maspeth Fed. Loan & Sav. Ass'n*, 30 F. Supp. 3d 183, 190 (E.D.N.Y. 2014) ("Credit transactions made primarily for business, commercial, or agricultural

---

[1] I note the numbering of paragraphs in Ms. Speer's amended complaint is inaccurate—the paragraphs reach number 17 under the heading for Count One, and then under the heading for Count Two the paragraphs return to number 14. At this point, I am referring to the allegations made under the heading for Count Two, beginning with paragraph 14 thereunder.

purposes are exempt from RESPA.") (cleaned up). Ms. Speer also cannot state a claim for

slander of title because, as I concluded in my prior order, there is no dispute that Ms. Speer did in

fact take out a mortgage on the Property, which is currently held by Cabana Series Trust. *Id.* at 9-

10. *See also Bellemare v. Wachovia Mortg. Corp.*, 284 Conn. 193, 202 (2007) ("A cause of

action for slander of title consists of any *false* communication which results in harm to interests

of another having pecuniary value.") (emphasis added).

Ms. Speer alleges that the Defendants erroneously denied her applications for loan

modification under the Home Affordable Modification Program (HAMP), which does not itself

confer a private right of action. However, she "may predicate a CUTPA claim on violations of

statutes or regulations that themselves do not allow for private enforcement," such as HAMP.

*See Cenatiempo v. Bank of Am., N.A.*, 333 Conn. 769, 792 n.16 (2019). To establish a CUTPA

claim, a plaintiff must establish that the alleged acts or practices are "unfair or deceptive,"

meaning that they "offend[] public policy," are "immoral, unethical, oppressive, or

unscrupulous," or "cause[] substantial injury to consumers." *Ramirez v. Health Net of Ne., Inc.*,

285 Conn. 1, 19 (2008). Ms. Speer, in her complaint as well as her Memorandum in Opposition,

relies entirely on the Connecticut Supreme Court's decision in *Cenatiempo,* which held that the

defendant, Bank of America's, policies and procedures that resulted in widespread denials of

HAMP applications amounted to immoral, unethical, oppressive, or unscrupulous actions. *See*

Am. Compl., Doc. No. 40, at ¶ 20; Mem. in Opp'n, Doc. No. 49, at 11-12. Ms. Speer's

allegations are distinguishable from the conduct at issue in *Cenatiempo*, however, because Ms.

Speer does not allege any pattern or practice of unethical conduct. She makes a conclusory

allegation that the Defendants "fail[] to diligently process applications" due to lack of "necessary

staffing and resources," but even that conclusory allegation is contradicted by other allegations

Ms. Speer makes that the Defendants denied her applications based on "failures to provide []

requested documentation, . . . investor restrictions, . . . [and] flawed evaluations of the

applications." *Id.* at ¶¶ 22, 24. Even if the Defendants' denials of Ms. Speer's HAMP

applications were in fact erroneous, those individual denials would be more similar to "isolated

instance[s] of misinterpretation by the defendant of its obligations," which Connecticut courts

have distinguished from unfair or deceptive acts or practices that violate CUTPA. *Jacobs v.*

*Healey Ford-Subaru, Inc*., 231 Conn. 707, 729 (1995). *See also Massad-Zion Motor Sales v. IP*

*Networked Servs., Inc.,* 2023 WL 5928131 (Conn. Super. Ct. Sept. 7, 2023) ("The present case is

readily distinguishable from *Cenatiempo* because the plaintiff has not alleged nor provided any

evidence that the defendant has a pattern or course of conduct that is immoral, unethical,

oppressive, or unscrupulous. An isolated instance of misrepresentation does not suffice to

demonstrate unfair or deceptive behavior.").

Therefore, I conclude that Ms. Speer has failed to state a plausible CUTPA claim, and the

Defendants' motion to dismiss that claim is **granted.**

B.    The Plaintiff's Motion for Reconsideration *(doc. no. 51)*

Ms. Speer also moves for reconsideration of my January 12, 2024 Order denying her

motion to remand the case to state court, doc. no. 50. Because Ms. Speer's amended complaint is

dismissed, her motion for reconsideration is moot.

IV.    **CONCLUSION**

For the following reasons, the Defendants' motion to dismiss, doc. no. 47, is **granted**,

and the Plaintiff's motion for reconsideration, doc. no. 51, is **denied as moot**. The amended

complaint is **dismissed with prejudice.** The clerk is directed to close this case.

So ordered.

Dated at Bridgeport, Connecticut, this 26th day of March 2024.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge